Hernández Torres, Juez Ponente
*957 TEXTO COMPLETO DE LA RESOLUCION
Comparece ante nos la parte recurrente, Antonio Jusino Rodríguez (en adelante Jusino Rodríguez), y nos solicita la revisión de una resolución emitida por la Junta' de Apelaciones del Sistema de Administración de Personal (J.A.S.A.P.); el 2 de abril de 2002, notificada y archivada en autos el 4 de abril de 2002. Mediante dicha resolución, J.A.S.A.P. declaró no ha lugar la apelación presentada por la parte aquí recurrente respecto a la determinación de la Administración de Corrección, de denegarle el nombramiento al puesto de Técnico de Servicios Sociopenales I, fundamentada en una investigación confidencial que dicha agencia le había realizado.
Una vez evaluado, el presente recurso se acoge como certiorari al amparo de los Artículos 2.0005 y 9.004 de la Ley Núm. 201 de 22 de agosto de 2003, mejor conocida como la "Ley de la Judicatura del Estado Libre Asociado de Puerto Rico de 2003".
Luego de estudiados los hechos, así como el derecho aplicable, se deniega la expedición del auto de revisión.
I
El 23 de mayo de 1996, la Administración de Corrección emitió la convocatoria Núm. 95-17 para el puesto de Técnico de Servicios Sociopenales I. La parte apelante-recurrente, Antonio Jusino Rodríguez, solicitó la plaza de Técnico de Servicios Sociopenales I. El 27 de junio de 1997, la Administración de Corrección le notificó a Jusino Rodríguez que había sido seleccionado para ocupar un puesto de Técnico de Servicios Sociopenales I y que debía comparecer a la Oficina de Personal el 7 de julio de 1997. Para la fecha del 23 de diciembre de 1997, la Administración de Corrección le informó a la parte recurrente, Jusino Rodríguez, que como requisito del examen para el puesto de Técnico de Servicios Sociopenales I, era necesario realizar una investigación minuciosa en la comunidad, la cual en su caso había resultado negativa. En dicha misiva además le informaron a la parte aquí recurrente que debido a esta razón no reunía los requisitos necesarios para el puesto de Técnico de Servicios Sociopenales I.
El 15 de septiembre de 1998, la parte recurrente presentó escrito de apelación ante J.A.S.A.P. de la determinación tomada por la Administración de Corrección de no nombrarlo en el puesto de Técnico de Servicios Sociopenales I. Jusino Rodríguez impugnó en su escrito de apelación ante J.A.S.A.P., la determinación de la Administración de Corrección de no nombrarlo al puesto de Técnico de Servicios Sociopenales I, a raíz del resultado negativo de la investigación de comunidad que se le hiciera para el puesto. El T° de marzo de 1999, la Administración de Corrección presentó ante J.A.S.A.P. su escrito en oposición a la apelación.
El 9 de enero de 2002, se celebró ante J.A.S.A.P. la vista administrativa del caso. Luego que las partes presentaron la prueba testifical y documental, el caso quedó sometido ante la consideración de J.A.S.A.P. Así las cosas, el 21 de febrero de 2002, el oficial examinador que tenía a su cargo el caso, emitió su informe a base de la totalidad del expediente y de la credibilidad que le dio a la prueba e hizo las siguientes determinaciones de hechos:

“[...]

*958
3. El 23 de marzo de 1996, la agencia apelada emitió la convocatoria Núm. 95-17 para el puesto de Técnico de Servicios Sociopenales I.

4. En la convocatoria 95-17 constaba una nota que decía:

"IMPORTANTE

Por la naturaleza de las funciones del puesto, se realizará una investigación de los candidatos que sean seleccionados mediante certificación de elegibles de los registros que surjan de esta convocatoria, siempre y cuando no sean empleados de esta Agencia.

El registro que surja como resultado de esta convocatoria cancelará el registro existente. Por lo tanto, las personas que figuren en el mismo deberán solicitar y aprobar el examen correspondiente si interesan ser considerados para puestos en esta Agencia.

5. El nombre del apelante fue incluido en la certificación de elegibles fechada 19 de junio de 1997 con una puntuación de 95.28.

[...]

7. El Sr. Héctor L. Rivera, Supervisor de la Sección de reclutamiento, le cursó carta al apelante, fechada 27 de junio de 1997, informándole que había sido seleccionado para ocupar un puesto de Técnico de Servicios Sociopenales I y que debía comparecer a la Oficina de Personal el 7 de julio de 1997.

8. Al apelante se le realizó una investigación confidencial sobre su carácter, reputación, hábitos, conducta en la comunidad y otros aspectos pertinentes.

9. Que la investigación confidencial fue realizada por el Agente Investigador, Osvaldo Alvarado Miranda. La investigación de campo se realizó en los lugares donde ha residido el apelante y un cotejo de sus antecedentes penales.

10. El Investigador Alvarado realizó 18 entrevistas. Diecisiete de las entrevistas fueron a vecinos y ex vecinos del apelante. Seis en el Condominio Santa María en Río Piedras, donde informó el apelante que había residido un (1) año; seis en el Barrio Buey Alto de San Germán, donde informó el apelante había residido por cuarenta años; y cinco en la Urb. Berwind Estates de Río Piedras, último lugar de residencia del apelante. La restante fue a un Policía Estatal que investigo [sic.J una querella de agresión en contra del apelante.

11. De las 18 entrevistas, 6 personas hablaron favorablemente del apelante, 2 se abstuvieron, 2 indicaron no conocerlo y 8 no lo recomendaron para el puesto.

12. Entre las personas entrevistadas estaba la ex esposa del apelante, Aida I. Bobe Méndez, quién [sic] se abstuvo de emitir opinión en cuanto a recomendar o no al apelante para el puesto. No obstante, informó que tenía una orden de protección en contra del apelante y que en una ocasión este [sic] agredió a su hija Beatriz Jusino.

13. De las ocho personas que no recomendaron al apelante, seis eran ex vecinos del Condominio Santa María II. Los otros dos son ex vecinos del barrio Duey Alto de San Germán. Ambos señalaron que el apelante hostigaba a su ex esposa, le gritaba palabras obscenas y la amenazaba de muerte. Declararon que el apelante había agredido físicamente a su hija Beatriz Jusino Bobe.

*959
14. Las ocho personas entrevistadas que no recomendaron al apelante para el puesto lo describieron corito una persona agresiva, problemática y que utilizaba su arma de fuego para amenazar.

15. De la investigación de antecedentes penales del apelante surgió que fue destituido del servicio público el 2 de abril de 1986 por haberse apropiado ilegalmente de tres cheques del Departamento de Servicios Sociales. El 23 de octubre de 1990, la Junta Consultiva de Habilitación del Servicio Público de la Oficina Central de Administración de Personal habilitó al apelante para que pudiera ocupar un puesto en el servicio público.

16. Surge del Informe preparado por el investigador que eh el Cuartel del Precinto de Monte Hatillo aparecía uña querella con fecha de 3 de enero de 1996por el delito de agresión contra el apelante. La querella fue radicada por las hijas de la actual esposa del apelante quienes informaron que este había agredido a su madre y al ellas intervenir fueron también agredidas.

17. El apelante atribuyó las malas referencias dadas por las personas entrevistadas en el Condominio Santa María II al hecho de que éste pertenecía a la Junta de Residentes y por tratar de eliminar el problema que existía de unos puntos de drogas.

18. Como resultado de la investigación de la agencia apelada, éste no cumplía con los requisitos para ocupar el puesto de Técnico de Servicios Sociopenal I notificándoselo mediante carta fechada 23 de diciembre de 1997.

19. El testigo, Harry Hernández Betancourt, reside eñ el cuarto piso del Cond. Santa María II, donde residió el apelante. No fue entrevistado por el agente. Que conoce al apelante desde 1996 cuando era miembro de la Junta de Residentes. Declaró que el apelante tenía discusiones en la Junta, pero no eran de índole personal. De las personas entrevistadas indicó que la señora Salazar había tenido problemas con la Junta y que conocía la señora María Rodríguez con quien comparte mucho, ya que actualmente pertenece a la Jünta. Recomienda al apelante para el puesto.

20. La testigo, Beatriz Jusino Bobe, hija del apelante, confirmó el hecho de que para mayo de 1994 tuvo un incidente con su padre, quien la regaño y agredió. Que su mama puso una orden de protección cuando ella estaba fuera de Puerto Rico. Recomienda a su padre para el puesto.

21. La testigo, Lilliam González Ortiz, lleva casada con el apelante siete años. Lo recomienda para el puesto.

22. Declaró la señora Marta Serrano, Directo'ra de Recursos Humanos de la apelada, que en la convocatoria se advierte a los solicitantes de que se realizará una investigación a los apelantes que no sean empleados de la agencia. Que en la convocatoria 95-17 habían tres puestos disponibles, por lo que la certificación de elegibles era de treinta (30) personas. En dicha certificación de elegibles había personas con mayor y menor puntuación que el apelante.

23. La investigación realizada por el Agente Alvarado fue examinada por el Panel Evaluador de Candidatos, compuesto por tres personas, que mediante comunicación fechada 3 de diciembre de 1997 determinaron no recomendarlo para el puesto de Técnico de Servicios Sociopenales I.

24. En carta fechada 23 de diciembre de 1997 dirigida al apelante, la señora Nereida Lancén Manso, Directora de Personal de la agencia apelada, le informa al apelante que el informe recibido de la investigación fue negativo y que por tal razón, no reunía los requisitos necesarios para el puesto de Técnico de Servicios Sociopenales I.

*960 [...]".
(Ap. Anejo 3, a las págs. 40-42).
Finalmente, el 2 de abril de 2002, J.A.S.A.P. emitió una resolución en la cual declaró no ha lugar la apelación presentada por la parte aquí recurrente, Jusino Rodríguez, respecto a la determinación de la Administración de Corrección de denegarle el nombramiento al puesto de Técnicos de Servicios Sociopenales I, fundamentada en una investigación confidencial que dicha agencia realizara.
El 24 de abril de 2002, la parte aquí recurrente, Antonio Jusino Rodríguez, presentó ante la consideración de J.A.S.A.P. una moción de reconsideración. En dicha moción, la recurrente planteó que el oficial examinador de J.A.S.A.P. había errado en la apreciación de la prueba que obraba en el récord, ya que le dio entera fe y crédito a las entrevistas hechas por los investigadores Alvarado Miranda y Margarita Carrasquillo, aunque esa prueba fue objetada vigorosamente al estar alegadamente plagada de prueba de referencia. El 7 de mayo de 2002, J.A.S.A.P. emitió una resolución mediante la cual declaró no ha lugar la moción de reconsideración presentada por la parte recurrente, Jusino Rodríguez, la cual fue notificada y archivada en autos el 8 de mayo de 2002.
Inconforme Jusino Rodríguez, la parte aquí recurrente, con dicha determinación, presentó el 7 de junio de 2002 ante este Tribunal de Circuito de Apelaciones, recurso de revisión en el cual señaló que incidió J.A.S.A.P. en la apreciación de la prueba. Además, señaló que erró J.A.S.A.P. al no garantizarle el debido proceso de ley.
El 27 de junio de 2002, este Tribunal Apelativo emitió una resolución denegando la expedición del auto de revisión, pues aceptada la relación de hechos, conforme a como la presentó la parte aquí recurrente en su recurso, concluimos que no incidió J.A.S.A.P. al emitir su dictamen, a pesar de que dicha parte no nos solicitó la transcripción de la vista y los autos de revisión, conforme lo dispone el ordenamiento procesal apelativo.
Así las cosas, el 24 de julio de 2002, la parte aquí recurrente, Jusino Rodríguez, presentó ante nos Moción de Reconsideración y Solicitud de Orden. En la referida moción de reconsideración, la parte aquí recurrente argumentó que no había podido presentar la transcripción de la prueba oral ante nos por causas ajenas a su control pues a pesar de haber hecho las gestiones ante J.A.S.A.P., ésta no le pudo suministrar lo solicitado debido a que el equipo de reproducción de fotocopias estaba dañado y que no contaban con equipo adecuado de reproducción de cintas magnetofónicas. Una vez atendida la moción en solicitud de reconsideración presentada por la parte aquí recurrente, Jusino Rodríguez, le concedimos a J.A.S.A.P. y a la Administración de Corrección un término de diez (10) días para que expresaran su posición respecto a la moción de reconsideración, en particular sobre sus argumentos sobre las dificultadas que tuvo la parte aquí recurrente para obtener las grabaciones de la vista ante la agencia y copia del expediente del caso. El 16 de septiembre de 2002, ante la incomparecencia de J.A.S.A.P. y el Departamento de Corrección, se volvió a emitir otra resolución concediéndoles a dichas partes un término final de diez (10) días para que cumplieran con lo anteriormente ordenado. El 3 de octubre de 2002, este Tribunal volvió a emitir otra resolución concediéndoles a J.A.S.A.P. y al Departamento de Corrección otro término final de diez (10) días para que comparecieran con sus posiciones respecto a la moción de reconsideración presentada por la parte aquí recurrente, Jusino Rodríguez, el 24 de julio de 2002.
Finalmente, el 4 de octubre de 2002, J.A.S.A.P. compareció ante nos mediante moción en cumplimiento de orden. J.A.S.A.P., parte aquí recurrida, en la referida moción acepta que Jusino Rodríguez, parte aquí recurrente, le había solicitado el 14 de mayo de 2002 mediante carta, copia del expediente ante su consideración y las grabaciones que se tomaron durante la vista administrativa del caso ante nos; sin embargo, lo aquí solicitado no se le pudo proveer, pues el equipo "que se necesitaba estaba dañado.
*961 El 8 de octubre de 2002, este Tribunal Apelativo emitió una resolución declarando con lugar la moción de reconsideración presentada por la parte aquí recurrente, Jusino Rodríguez, el 24 de julio de 2002. De conformidad con lo anteriormente expuesto, se procedió a dejar sin efecto nuestra resolución de 27 de junio de 2002 en la cual denegamos la expedición del auto de revisión y ordenamos la reapertura del caso. Además, se le ordenó a J.A.S.A.P. que en un término de cinco (5) días le entregara a la parte aquí recurrente copia del expediente administrativo, según dicha parte lo había solicitado en su misiva de 14 de mayo de 2002. Por último, se le ordenó a Jusino Rodríguez, parte aquí recurrente, que una vez J.A.S.A.P. cumpliera con lo que se le había ordenado en el término de veinte (20) días, presentara un proyecto de exposición narrativa de la prueba.
Luego de varios trámites procesales relacionados con el proyecto de exposición narrativa de la prueba, el 25 de marzo de 2003, la parte aquí recurrente mediante moción informativa presentó ante nos la transcripción de la prueba oral. El 2 de julio de 2002, la Administración de Corrección, por conducto del Procurador General, presentó sus objeciones a transcripción de la prueba oral presentada por la parte aquí recurrente. Finalmente, el 22 de agosto de 2003, Jusino Rodríguez, parte aquí recurrente, compareció ante nos mediante moción en cumplimiento de orden en la cual aceptó las correcciones hechas por la parte aquí recurrente a la prueba oral y dio así por admitidas las mismas. El 27 de agosto de 2003, este Tribunal emitió una resolución dando por estipulada la transcripción de la prueba oral presentada por Jusino Rodríguez, así como las objeciones hechas por el Departamento de Corrección a la misma.
Por no haber comparecido hasta el momento el Departamento de Corrección, parte aquí recurrida, mediante su escrito en oposición, nos encontramos en posición de resolver sin el beneficio de su comparecencia.
II
A
La Sección 4.5 de la Ley de Procedimiento Administrativo Piniforme (L.P.A.U.), 3 L.P.R.A. 2175, establece que " [l]as determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo". Véase: Misión Ind. P.R. v. J.P., 146 D.P.R. 64, 131 (1998); Metropolitana S.E. v. A.R.P.E., 138 D.P.R. 200, 213 (1995). Esta disposición recoge estatutariamente la norma jurisprudencial que establece que, de ordinario, los tribunales no deben intervenir con las determinaciones de hechos de un organismo administrativo si éstas se apoyan en prueba suficiente que surja del expediente considerado en su totalidad. Pacheco Torres v. Estancias de Yauco, S.E., Opinión de 30 de septiembre de 2003, 2003 J.T.S. 150, a la pág. 211; Misión Ind. P.R. v. J.P., supra; Metropolitana S.E. v. A.R.P.E., supra; Fac. C. Soc. Aplicadas Inc. v. C.E.S., 133 D.P.R. 521, 532-533 (1993).
La evidencia sustancial, según ha sido definida "es aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión". Pacheco Torres v. Estancias de Yauco, S.E., supra; Misión Ind. P.R. v. J.P., supra; Hilton Hotels v. Junta de Salario Mínimo, 74 D.P.R. 670, 687 (1953). Por ello, la parte afectada por una determinación de hecho de una agencia debe, en primer lugar, "demostrar que existe otra prueba en el récord que reduzca o menoscabe el valor probatorio de la evidencia impugnada, hasta el punto de que no se pueda concluir que la determinación de la agencia fue razonable de acuerdo con la totalidad de la prueba que tuvo ante su consideración". Ramírez v. Depto. de Salud, 147 D.P.R. 901 (1999); Misión Ind. P.R. v. J.P., supra. “Si la parte afectada no demuestra la existencia de otra prueba, las determinaciones de hechos de una agencia deben ser sostenidas por el tribunal revisor." Ramírez v. Depto. de Salud, supra. Esto persigue evitar que los tribunales sustituyan el criterio de la agencia por el suyo propio. En caso de que exista más de una interpretación razonable de los hechos, el tribunal debe sostener la que seleccionó la agencia, y no sustituir su criterio por el de ésta. Pacheco Torres v. Estancias de Yauco, S.E., supra; Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R., 144 D.P.R. 425, 437 (1997).
*962 B
La Sección 4.1 de la Ley de Procedimiento Administrativo Uniforme (L.P.A.U.), 3 L.P.R.A. see. 2171, permite que se solicite al Tribunal de Circuito de Apelaciones la revisión de decisiones administrativas. Al respecto, es norma de derecho claramente establecida que los tribunales apelativos han de conceder gran consideración y deferencia a las decisiones administrativas en vista de la vasta experiencia y conocimiento especializado de la agencia. Pacheco Torres v. Estancias de Yauco, S.E., supra, a la pág. 210; T. Jac, Inc. v. Caguas Centrum Limited, 148 D.P.R. 70 (1999); Agosto v. Fondo del Seguro del Estado, 132 D.P.R. 866, 879 (1993). Por lo tanto, la persona que alegue lo contrario tendrá que presentar evidencia suficiente para derrotar tal presentación, no pudiendo descansar únicamente en meras alegaciones. Pacheco Torres v. Estancias de Yauco, S.E., supra, alas págs. 210-211.
La revisión judicial es limitada. Sólo determina si la actuación administrativa fue una razonable y cónsona con el propósito legislativo o si por el contrario fue irrazonable, ilegal o medió abuso de discreción. Municipio de San Juan v. Junta de Calidad Ambiental, 99 J.T.S. 152, Opinión de 5 de octubre de 1999, a la pág. 125; supra, a la pág. 884; Com. Vec. Pro-Mej., Inc. v. J. P., 147 D.P.R. 750 (1999); Fuertes y otros v. A.R.P.E., 134 D.P.R. 947, 953 (1993).
Por lo general, la revisión judicial de decisiones administrativas comprende tres áreas. Estas se extienden a: (1) la concesión del remedio adecuado, (2) la revisión de las determinaciones de hechos conforme al criterio de la evidencia sustancial; (3) la revisión completa y absoluta de las conclusiones de derecho. Sección 4.5 de la Ley de Procedimiento Administrativo Uniforme, supra; Pacheco Torres v. Estancias de Yauco, S.E., supra, a la pág. 211; Mun. de San Juan v. J.C.A., Opinión de 5 de octubre de 1999, 99 J.T.S. 152, pág. 125; Misión Ind. P. R. v. J.P., supra, a la pág. 129. Véase además: Demetrio Fernández Quiñones, Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme, Colombia, Ed. Forum, 1993, pág. 521.
Es norma reiterada que los procedimientos y decisiones administrativas tienen una presunción de regularidad y corrección que debe refutar quien las impugna, sin descansar en meras alegaciones. Pacheco Torres v. Estancias de Yauco, S.E., supra, a las págs. 210-211; Com. Vec. Pro-Mej. Inc. v. J.P., supra. Sin embargo, las cuestiones de derecho, contrario a las de hechos, que no involucren interpretaciones efectuadas dentro del ámbito de especialización de la agencia son revisables en toda su extensión. Véanse: Pacheco Torres v. Estancias de Yauco, S.E., supra, a la pág. 211; San Antonio Maritime v. Puerto Rican Cement, Opinión de 19 de febrero de 2001, 2001 J.T.S. 20, pág. 860; T. Jac, Inc. v. Caguas Centrum Limited, supra. Si las conclusiones de derecho de un foro administrativo están sujetas al mandato de la ley, los tribunales debemos sostenerlas. Misión Ind P.R. v. J.P., supra, a la pág. 133. Es por esta razón que los tribunales debemos ser cautelosos al intervenir con dichas determinaciones. Viajes Gallardo v. Homero Clavell, 131 D.P.R. 275, 290 (1992). Aun en los casos dudosos, cuando la interpretación de la agencia no sea la única razonable, la actuación del organismo administrativo merece deferencia sustancial. Véase: De Jesús v. Departamento de Servicios Sociales, 123 D.P.R. 407, 418 (1989); Asociación Médica de Puerto Rico v. Cruz Azul, 118 D.P.R. 669, 678 (1987).
Con respecto a este particular, el Tribunal Supremo ha expresado que "[n]o empece esta deferencia, la interpretación de la agencia no merece deferencia si la misma afecta derechos fundamentales, resultare irrazonable, o conduce a la comisión de una injusticia". Costa, Piovanetti v. Caguas Expressway, Opinión de 29 de diciembre de 1999, 2000 J.T.S. 11, pág. 489. Por otro lado, la interpretación de una agencia administrativa tampoco podrá prevalecer y sostenerse cuando la misma produce resultados inconsistentes con o contrarios al propósito del estatuto interpretado. Id.; Calderón v. Adm. Sistemas de Retiro, 129 D.P.R. 1020, 1042 (1992). Además se ha sostenido que los tribunales revisores podrán intervenir con una determinación administrativa, si la misma fue “irrazonable, ilegal o si medió abuso de discreción". T. Jac, Inc. v. Caguas Centrum Limited, supra. Véase además: Agosto v. Fondo del Seguro del Estado, supra.
*963 C
La Ley de Personal del Servicio Publico de Puerto Rico
La Ley Núm. 5 de 14 de octubre de 1975, según enmendada, mejor conocida como la "Ley de Personal del Servicio Público de Puerto Rico" establece los procedimientos que regirán el reclutamiento y selección de empleados dentro del ámbito del servicio público. 3 L.P.R.A. see. 1301. La política pública que pretende implementar la Ley de Personal del Servicio Público de Puerto Rico respecto a los aspectos de personal, es la siguiente:
“§1311. Política pública - Contenido

La política pública del Estado Libre Asociado de Puerto Rico en lo relativo al personal del servicio público es la que a continuación se expresa:

(1) Establecer el mérito como el principio que regirá todo el servicio público, de modo que sean los más aptos los que sirvan al Gobierno y que todo empleado sea seleccionado, adiestrado, ascendido y retenido en su empleo en consideración al mérito y ala capacidad, sin discrimen por razones de raza, color, sexo, nacimiento, edad, origen o condición social, ni por ideas políticas o religiosas.

[...]".
3 L.P.R.A. sec. 1311. Véase: Martínez Figueroa v. Oficina del Gobernador, Opinión de 20 de noviembre de 2000, 2000 J.T.S. 185, a la pág. 426; Piñero v. A.A.A., 146 D.P.R. 890, 906 (1998); Torres Ramos v. Policía de P.R., 143 D.P.R. 783, 790 (1997); Torres Solano v. P.R.T.C., 127 D.P.R. 499, 514 (1990); Olivieri Morales v. Pierluisi, 113 D.P.R. 790, 797 (1983). La clave es la idoneidad del aspirante al servicio público. Martínez Figueroa v. Oficina del Gobernador, supra.
El servicio público exige de sus empleados una conducta compatible con los objetivos de excelencia, eficiencia y productividad, y los criterios de seguridad, armonía, orden y disciplina entre compañeros, y continuidad de servicio al pueblo. Torres Solano v. P.R.T.C., supra. Así, el proceso de selección de candidatos resulta ser uno de los aspectos más cruciales en el funcionamiento de este tipo de sistema. Martínez Figueroa v. Oficina del Gobernador, supra.
Como derivado de este principio general, nuestro ordenamiento jurídico le impone a las autoridades nominadoras la obligación de brindar a la ciudadanía la oportunidad de competir en igualdad de condiciones en la obtención de empleos en el sector público. Torres Ramos v. Policía de P.R., supra.
El propósito de la Ley de Personal del Servicio Público de Puerto Rico es crear las condiciones que hagan posible atraer y retener a los mejores servidores públicos. Por ello, es que su principal propósito es que el país sea servido por los más competentes y mejores servidores. Díaz González v. Tribunal Superior, 102 D.P.R. 195, 211 (1974).
Además, esta Ley persigue el propósito de extender el principio de mérito al mayor número posible de servidores públicos. Torres Solano v. P.R.T.C., 127 D.P.R. 499, 512-513 (1990). Cónsono con lo anteriormente expuesto, es que se le exige a los empleados reclutados pericia técnica, sino también actitudes e ideales de honradez, autodisciplina, respeto a la dignidad humana y dedicación al bienestar general. Id.
Como parte del proceso de reclutamiento, el Artículo 4.3 de la Ley de Personal del Servicio Público de Puerto Rico, 3 L.P.R.A. see. 1333 (Supp. 2003), dispone que se deberán preparar una normas de reclutamiento para cada clase; se procesarán las solicitudes determinando qué candidatos reúnen los requisitos establecidos; se *964 preparará un examen y la agencia a su vez preparará un registro de elegibles en estricto orden descendente de los examinados que aprueben el examen. Es ese el registro utilizado para emitir una Certificación de Elegibles del cual la agencia concerniente escogerá a la persona más idónea para llevar a cabo las funciones del puesto. A tenor con la disposición legal anteriormente expuesta, todo candidato que figure en el Registro de Elegibles deberá cumplir con unos requisitos mínimos, pues no todos los candidatos tienen la misma preparación académica ni la misma experiencia, teniendo así la autoridad nominadora discreción para seleccionar cualquiera de los candidatos que figure en el registro de elegibles, siempre y cuando cumpla con los requisitos mínimos del puesto.
De conformidad con los preceptos de la Ley de Personal del Servicio Público de Puerto Rico, la Administración de Corrección adoptó un reglamento de personal que recoge los elementos esenciales del principio de mérito. Véase: Sección 5.7 y 5.13 de la Ley de Personal del Servicio Público de Puerto Rico, 3 L.P. R.A. secs. 1347 y 1353. La Sección 6.9 del Reglamento de Personal Para los Empleados de Carrera de la Administración de Corrección dispone respecto a los nombramientos transitorios lo siguiente:

“[...]

El proceso de reclutamiento y selección para los aspirantes a nombramientos transitorios consistirá de una evaluación de los candidatos a los únicos fines de determinar si reúnen los requisitos mínimos establecidos para la clase de puesto en la cual habrán de ser nombrados.

No obstante lo anteriormente, los empleados con nombramientos transitorios no se considerarán empleados de carrera. Ninguna persona que haya recibido nombramiento transitorio podrá ser nombrada para desempeñar puestos en el servicio de carrera con status probatorio o regular, a menos que haya pasado por el proceso de reclutamiento y selección que establece la Sección 4.3 de la ley.” (Enfasis Suplido.)
La última enmienda hecha a la Sección 6.7 del Reglamento de Personal para los Empleados de Carrera de la Administración de Corrección sobre el aspecto de reclutamiento y selección establece lo siguiente:

“Sección 6.7 Verificación de Requisitos, Investigación, Examen Médico y Juramento de Fidelidad

[...]

3. Todo candidato a ingreso deberá aprobar positivamente una investigación minuciosa practicada en la comunidad sobre su carácter, reputación, hábitos, conducta en general y otros detalles similares.

El informe que se prepare sobre dicha investigación será de carácter (sic) confidencial y para uso exclusivo del Administrador de Corrección. (Enfasis Suplido.)

[...]’’.

D
La parte aquí recurrente, Jusino Rodríguez, nos plantea en su primer señalamiento de error que erró J. A.S. A.P. al evaluar y apreciar la prueba y al hacer sus determinaciones de hechos, lo que le ocasionó un grave daño. Este señalamiento de error no se cometió. Veamos porqué.
En específico, Jusino Rodríguez, parte recurrente, nos señala que incidió J.A.S.A.P. en su determinación de hechos número quince (15) al determinar que dicha parte fue destituido del servicio público el 2 de abril de 1986 por haberse apropiado ilegalmente de tres (3) cheques del Departamento de Servicios Sociales. En realidad, la parte aquí recurrente, Jusino Rodríguez, nunca fue sentenciado por el delito de apropiación ilegal *965 por estos hechos. Lo que en realidad sucedió con los cheques fue que Jusino Rodríguez, parte recurrente, fue acusado por infracción al Artículo 210 del Código Penal, 33 L.P.R.A. see. 4361, y el mismo fue rebajado a un delito menos grave por violación al Artículo 200 del Código Penal, 33 L.P.R.A. see. 4351, el cual fue archivado el 23 de enero de 1987 por el Tribunal de Primera Instancia, Sala de Mayagüez, por haber prescrito el mismo. Véase, la Parte 2 de 2 de la copia del expediente de investigación realizada por la Administración de Corrección según suministrado por J.A.S.A.P.
No obstante lo anteriormente expuesto, según surge del expediente ante nuestra consideración, Jusino Rodríguez, parte aquí recurrente, fue incluido en la Certificación de Elegibles Número 96-368 para el puesto de Técnico de Servicios Sociopenales I. Sin embargo, el hecho de que la parte aquí recurrente, Jusino Rodríguez, haya ocupado un puesto transitorio durante los años 1993-1994, no lo eximía de cumplir con todos los rigores del proceso de selección establecidos en la Ley de Personal del Servicio Público de Puerto Rico así como de las disposiciones del Reglamento de Personal Para los Empleados de Carrera de la Administración de Corrección, en específico sin la aprobación positiva de una investigación sobre su persona en la comunidad sobre su carácter, reputación, hábitos y conducta entre otros, contrario a lo que sostiene la parte aquí recurrente. De los documentos que obran en el expediente ante nuestra consideración, así como de la copia del expediente administrativo, surge que, en efecto, el producto del informe de la investigación realizado a Jusino Rodríguez en la comunidad fue uno negativo, pues de las dieciocho (18) personas entrevistadas, ocho (8) no lo recomendaron para el puesto, por lo que no reunía los requisitos necesarios para ser nombrado en el puesto de Técnico de Servicios Sociopenales I del Departamento de Corrección. Véase Sección 6.7(3) del Reglamento de Personal Para los Empleados de Carrera de la Administración de Corrección.
Luego de analizar el expediente ante nuestra consideración, la transcripción de la vista administrativa, las objeciones hechas por el Departamento de Corrección a la misma y de examinar copia del expediente de J.A.S.A.P., hay que concluir que J.A.S.A.P. no incidió al apreciar la prueba y no haber seleccionado para el puesto de Técnico de Servicios Sociopenales I del Departamento de Corrección a la parte aquí recurrente. Además, hay que señalar que a tenor con la deferencia que de ordinario se le da a las agencias administrativas, este tribunal revisor no intervendrá con las determinaciones de hechos que hizo J.A.S.A.P., a excepción de lo aclarado anteriormente, pues la parte aquí recurrente no nos demostró que el foro administrativo hubiera actuado de forma ilegal, irrazonable y mediado abuso de discreción al evaluar la prueba que tuvo ante su consideración.
III
A
El derecho al debido proceso de ley se entronca en la Sección 7 del Artículo II de la Constitución de Puerto Rico. 1 L.P.R.A. Dicha sección establece que "[njinguna persona será privada de su libertad o propiedad sin debido proceso de ley". El "debido proceso de ley, encarna la esencia de nuestro sistema de justicia. Su prédica compendia elevados principios y valores que reflejan nuestra vida en sociedad y el grado de civilización alcanzado. Es herencia de nuestros antepasados, fruto de nuestro esfuerzo colectivo y nuestra vocación democrática de pueblo.” Amy v. Adm. Deporte Hípico, 116 D.P.R. 414, 420 (1984). Véase además: López y otros v. Asoc. de Taxis de Cayey, 142 D.P.R. 98, 113 (1996).
El debido proceso de ley se manifiesta en dos vertientes distintas: la sustantiva y la procesal. Alvarez Elvira v. Arias Ferrer, Opinión de 18 de marzo de 2002, 2002 J.T.S. 37, a la pág. 825; Rodríguez Rodríguez v. E.L.A., 130 D.P.R. 562, 578 (1992); Rivera Santiago v. Srio. de Hacienda, 119 D.P.R. 265, 273 (1987). En su vertiente sustantiva, los tribunales examinan la validez de la parte sustantiva de una ley a la luz de la Constitución. Id. Mientras que, en su aspecto procesal, le impone al Estado la obligación de garantizar que la interferencia con los intereses de libertad y propiedad del individuo se haga a través de un procedimiento que en esencia sea justo, equitativo y que respete la dignidad de los individuos afectados. Alvarez Elvira v. Arias Ferrer, supra; *966 Rodríguez Rodríguez v. E.L.A., supra; López Vives v. Policía de Puerto Rico, 118 D.P.R. 219, 230 (1987). Además, el debido proceso de ley en su vertiente procesal "toma en cuenta las garantías procesales mínimas que el Estado debe proveerle a un individuo al afectarle su vida, propiedad o libertad". Rivera Santiago v. Srio. de Hacienda, supra, a la pág. 273.
La jurisprudencia ha establecido una serie de requisitos con los que deben cumplir los procedimientos adversativos de forma cónsona con el debido proceso de ley, en su dimensión procesal. Estos son: "a) notificación adecuada de la reclamación presentada; b) proceso ante un juzgador imparcial; c) oportunidad de ser oído; d) derecho a contrainterrogar testigos y examinar la evidencia presentada en su contra; e) tener asistencia de abogado; y f) que la decisión se base en el récord." Alvarez Elvira v. Arias Ferrer, supra. Véase además: Feliciano Figueroa, et. als. v. Tosté Piñero, 134 D.P.R. 909, 914-915 (1993); Rivera Rodríguez & Co. v. Stowell Taylor, Ect., 133 D.P.R. 881, 889 (1993). También se ha establecido que como parte del debido proceso de ley, todo individuo tiene derecho de presentar prueba oral y escrita a su favor. López y otros v. Asoc. de Taxis de Cayey, supra, a la pág. 114.
El Tribunal Supremo ha pronunciado en innumerables ocasiones que el derecho al debido proceso de ley no es un molde riguroso que se da en el abstracto, pues su naturaleza es eminentemente circunstancial y pragmática. Pueblo v. Andréu González, 105 D.P.R. 315, 320 (1976); Domínguez Talavera v. Tribunal Superior, 102 D.P.R. 423, 428 (1974).
B
En su segundo señalamiento de error, nos plantea la parte aquí recurrente, Jusino Rodríguez, que erró J.A.S. A.P. al no garantizarle el debido proceso de ley. Este señalamiento de error tampoco se cometió. Veamos.
La parte aquí recurrente, Jusino Rodríguez, en su escrito de revisión nos señala que a pesar de haber solicitado a J.A.S.A.P. oportunamente el descubrimiento de la prueba en su contra, este foro mantuvo la confidencialidad de los informantes y que lo dicho por éstos fue presentado en la vista administrativa por medio del testimonio de quien hizo la investigación en la comunidad, Osvaldo Alvarado. La parte recurrente se opuso a los mismos por alegadamente constituir prueba de referencia. Además, alegó que se omitió el testimonio de Marta Carrasquillo quien también formó parte de la investigación. También señaló que se mutilaron los informes que se le entregaron, inclusive aquéllos que le favorecían con el fin de mantener la identidad de los informantes bajo el mandato de la confidencialidad.
Según surge de los autos del caso ante nos, así como del escrito de revisión de la parte aquí recurrente, a dicha parte no se le negó el acceso a la información que obraba en poder de la Administración de Corrección respecto a la investigación de la comunidad que dicha agencia le realizara como parte del proceso de reclutamiento. Por el contrario, como admite la parte en su escrito de revisión, se le permitió el acceso a la misma conservando la confidencialidad de los informantes. Por otro lado, hay que señalar que lo declarado por el investigador, Osvaldo Alvarado, no constituye prueba de referencia porque establece su oposición o no endoso al nombramiento y no la veracidad de lo que los entrevistados dijeron.
Luego de un análisis exhaustivo del expediente ante nuestra consideración, hay que concluir que a la parte recurrente no se le negó acceso a la evidencia que obraba en el expediente administrativo en su contra y la decisión de J.A.S.A.P. estuvo basada y sostenida en el expediente o récord del caso. A tenor con lo anteriormente expuesto, es forzoso concluir que a la parte aquí recurrente no se le violaron las garantías constitucionales del debido proceso de ley; por el contrario, se le garantizaron a través de todo el proceso las misma y se le dio acceso a toda la prueba en su contra. Por lo tanto, el error anteriormente alegado no se cometió.
*967 IV
Por los fundamentos anteriormente expuestos, se deniega la expedición del auto de revisión, pues el dictamen de J.A.S.A.P. es conforme a derecho.
Lo acordó y ordena el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General